UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
In re:                                                          Chapter 11

    Beautiful View Realty, Inc.,                         Case No. 15-41682-cec

               Debtor(s).
-------------------------------------------------------------x

DECISION AFTER HEARING

APPEARANCES

| | |
|---|---|
| Nnenna Okike Onua | Rachel B. Drucker |
| McKinley Onua & Associates, PLLC | Windels Marx Lane & Mittendorf, LLP |
| 26 Court Street, Suite 300 | 156 West 56th Street |
| Brooklyn, New York 11242 | New York, New York 10019 |
| *Counsel for the Debtor* | *Counsel for secured creditor the NYCTL 1998-2 Trust and the Bank of New York Mellon as Collateral Agent and Custodian for the NYCTL 1998-2 Trust* |
| Jeremy Sussman | |
| Law Office of Daniel H. Richland, PLLC | |
| 225 Broadway, Suite 3800 | |
| New York, New York 10007 | |
| *Counsel for secured creditor Meilitz, Inc.* | |

CARLA E. CRAIG
Chief United States Bankruptcy Judge

These matters come before the court on the motion of secured creditor Meilitz, Inc. ("Meilitz") for relief from the automatic stay (the "Meilitz Motion"), and the motion of the NYCTL 1998-2 Trust and the Bank of New York Mellon as Collateral Agent and Custodian for the NYCTL 1998-2 Trust (the "Bank" and together with Meilitz, the "Creditors"), seeking relief from the automatic stay (the "Bank Motion" and together with the Meilitz Motion, the "Motions"). For the reasons stated below, the Motions are granted.

## BACKGROUND

On April 15, 2015 (the "Petition Date"), Beautiful View Realty, Inc. (the "Debtor") filed a voluntary petition for relief under chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code"). Pursuant to § 1107,[1] the Debtor continues to operate its business as a debtor in possession. The Debtor owns two parcels of real property located at 1145 Nostrand Avenue, Brooklyn, New York 11225 ("1145 Nostrand") and 1211 Nostrand Avenue, Brooklyn, New York 11225 ("1211 Nostrand" and together with 1145 Nostrand, the "Properties").

A.    Meilitz's Claim

On November 18, 2015, Meilitz filed a proof of claim in the amount of $1,649,195.00. (Claim 8-1, Case No. 15-41682.) Meilitz filed an amended proof of claim the same day that included additional documentation. (Claim 8-2, Case No. 15-41682.) The basis for the claim is four separate notes and mortgages that encumber the Properties. (Claim 8-2, Case No. 15-41682.) 1145 Nostrand is encumbered by three notes and mortgages: one dated June 23, 2006 in the principal amount of $125,000.00 ("Note 1"), one dated October 23, 2006 in the principal amount of $250,000.00 ("Note 3"), and one dated October 6, 2007 in the principal amount of $295,000.00 ("Note 4"). (Claim 8-2, Case No. 15-41682.) 1211 Nostrand is encumbered by a note and mortgage

---

[1] All statutory references are to the Bankruptcy Code, unless otherwise indicated.

dated October 23, 2006 in the principal amount of $200,000.00 ("Note 2") and is also encumbered by Note 3. (Claim 8-2, Case No. 15-41682.) A non-debtor property owned by a related entity, Gator Enterprises, Inc. ("Gator"), and located at 1169 Nostrand Avenue, Brooklyn, New York 11225 ("1169 Nostrand") was also encumbered by Note 3. (Claim 8-2, Case No. 15-41682.) The contract rate of interest on all the Notes is 14.875% and each note is subject to default interest at 24%. (Claim 8-2, Case No. 15-41682.) All the Notes were either made to or subsequently assigned to Meilitz. (Claim 8-2, Case No. 15-41682.) The Debtor defaulted on the Notes on or about June 1, 2009. (Claim 8-2, Case No. 15-41682.) Meilitz commenced a foreclosure action in July, 2010. (Claim 8-2, Case No. 15-41682.) On April 30, 2013, the Debtor[2] and Meilitz entered into a forbearance agreement (the "Forbearance Agreement) that postponed foreclosure proceedings.[3] (Claim 8-2, Case No. 15-41682.) The Debtor ultimately defaulted on the Forbearance Agreement. (Claim 8-2, Case No. 15-41682.)

B.     The Bank's Claim

The Bank is the holder of several tax liens from the City of New York for unpaid real estate taxes on 1211 Nostrand. (Am. Mot. for Relief from Stay ¶ 1, ECF Doc. No. 50 (hereinafter "Bank Mot.").)[4] The Bank filed four proofs of claim for the tax liens. (Claim Nos. 4-7, Case No. 15-41682.) On October 29, 2009, the Bank's predecessor-in-interest commenced a foreclosure proceeding in New York State Supreme Court against 1211 Nostrand on account of one of the tax liens dated June 26, 2008. (Bank Mot. ¶ 7.) The court entered a judgment in favor of the Bank on March 20, 2013. (Bank Mot. ¶ 8.) A foreclosure sale was scheduled for October 25, 2012. (Bank

---

[2] The Debtor's principal and Gator were also parties to the Forbearance Agreement. (Claim 8-2, Case No. 15-41682.)
[3] The Debtor and Meilitz also entered into two prior forbearance agreements that the Debtor defaulted on. (Claim 8-2, Case No. 15-41682.)
[4] All references to "ECF Doc. No." refer to the docket in this case, Case No. 15-41682, unless otherwise indicated.

2

Mot. ¶ 8.) The Debtor filed a voluntary petition under chapter 11 of the Bankruptcy Code on the same day, staying the foreclosure sale. (Bank Mot. ¶ 10.) After that case was dismissed, a second foreclosure sale was scheduled for April 16, 2015. (Bank Mot. ¶ 13.) That sale was stayed by the filing of the instant petition. (Bank Mot. ¶ 15.) The total of the Bank's claims as of the Petition Date is $133,671.93. (Bank Mot. ¶ 22.)

C.   The Motions

On December 23, 2015, Meilitz filed its motion for relief from the automatic stay with respect to both 1145 Nostrand and 1211 Nostrand. (Mot. for Relief from Stay, ECF Doc. No. 41 (hereinafter "Meilitz Mot.").) Meilitz seeks stay relief under §§ 362(d)(1) and (d)(2). (Meilitz Mot. ¶ 24.) Meilitz argues that the Debtor has not made any post-petition payments on account of its secured claim, and that the Debtor has used Meilitz's cash collateral without authorization. (Meilitz Mot. ¶¶ 27-28.) The Debtor does not dispute these contentions. Meilitz further argues that there is no equity in the Properties according to both the Debtor's schedules and an appraisal done on Meilitz's behalf. (Meilitz Mot. ¶ 33.) In its schedules, the Debtor valued 1145 Nostrand at $465,108.00 and 1211 Nostrand at $646,929.00 for a combined value of $1,112,037.00. (Am. Sched. A, ECF Doc. No. 19.) Meilitz's appraisals valued 1145 Nostrand at $565,000.00 and 1211 Nostrand at $620,000.00 for a combined value of $1,185,000.00. (Meilitz Mot. ¶ 16.)

On January 8, 2016, the Bank filed its motion for relief from the automatic stay with respect to 1211 Nostrand. (Mot. for Relief from Stay, ECF Doc. No. 46.)[5] The Bank also seeks stay relief under §§ 362(d)(1) and (d)(2). (Bank Mot. ¶ 36.) The Bank argues that the timing of the bankruptcy filings, right before scheduled foreclosure sales, shows bad faith. (Bank Mot. ¶ 47.) It also argues that there is a lack of adequate protection as the property value is declining due to continued unpaid

---

[5] The Bank filed an amended motion on January 21, 2016 to correct the hearing date. The motions are otherwise identical.

taxes and accumulating interest on the Bank's claim. (Bank Mot. ¶ 41.) In addition, the Bank argues that there is a lack of equity due to the other secured claims on 1211 Nostrand. (Bank Mot. ¶ 55.)

D.    The Debtor's Opposition

On February 3, 2016, the day set for the hearing on the Motions (the "Hearing"), the Debtor filed two memoranda of law in opposition to the Motions, an amended memorandum of law in opposition to the Meilitz Motion, and an objection to Meilitz's claim. See ECF Doc. Nos. 59-61.[6] The memoranda and the objection all challenge the amount of Meilitz's claim and argue that there is equity in the property. According to the Debtor, the actual amount of Meilitz's claim is $572,754.30. (Debtor's Opp'n ¶ 17.) While it is unclear from the papers exactly how the Debtor calculated this figure, the Debtor does raise some specific objections to the calculations of Meilitz's claim:

(1) The Debtor claims that it actually made thirteen payments of $5,000.00 to Meilitz during the forbearance period rather than the eleven that Meilitz reflected in its proof of claim; (Debtor's Opp'n ¶ 23;)

(2) the Debtor contends that Meilitz has been collecting rent from one of the tenants in 1145 Nostrand from February 2012 to the present, which would mean that Meilitz has collected $81,000.00 rather than the $39,200.00 reflected in its claim; (Debtor's Opp'n ¶ 26;)

---

[6] The two memoranda, the amended memorandum, and the objection are all substantially similar and raise, essentially, the same arguments. For convenience, the court will refer to the Amended Memorandum of Law in Opposition to Meilitz's Motion for Relief from Stay, ECF Doc. No. 62 (hereinafter "Debtor's Opp'n").

(3) the Debtor claims that while Meilitz did credit $431,500.00 from the sale of 1169 Nostrand,[7] the amount that should be credited was $518,320.00 pursuant to a settlement agreement; (Debtor's Opp'n ¶ 27;)

(4) the Debtor argues that Meilitz's legal fees are too high; (Debtor's Opp'n ¶ 28;) and

(5) the Debtor claims that Meilitz improperly charged default interest on the Notes. (Debtor's Opp'n ¶ 30.)

The Debtor also contends that Meilitz is not the original entity to which the Notes were made or assigned. The Debtor alleges, upon information and belief, that Meilitz, Inc. was dissolved on July 27, 2007 and never reinstated. (Debtor's Opp'n ¶ 12.) Instead, according to the Debtor, a separate corporation was incorporated with the same name on May 4, 2015. (Debtor's Opp'n ¶ 13.) Since the Notes were never transferred to the new Meilitz, "no legally existing mortgagor has submitted a proof of claim" with respect to the Notes. (Debtor's Opp'n ¶ 14.)

In response to the Bank Motion, the Debtor argues that because tax liens are accorded priority treatment under New York state law, the Bank will be adequately protected. (Mem. of Law in Opp'n ¶ 23, ECF Doc. No. 59.) The Debtor also argues that its second filing on the eve of a foreclosure sale is not enough to demonstrate bad faith. (Mem. of Law in Opp'n ¶ 23, ECF Doc. No. 27.) Finally, the Debtor argues that there is equity in the Properties because the value of 1211 Nostrand submitted by the Bank is too low. (Mem. of Law in Opp'n ¶¶ 31-32, ECF Doc. No. 59.)

---

[7] As mentioned above, 1169 Nostrand was owned by Gator, a related entity. Gator filed a petition under chapter 11 of the bankruptcy code on September 12, 2013 (Case No. 13-45564). The case was converted to chapter 7 on December 23, 2013. (Order Converting Chapter 11 Case, Case No. 13-45564, ECF Doc. No. 14.) The sale of 1169 Nostrand was approved by the court on August 15, 2014. (Order Confirming the Sale, Case No. 13-45564, ECF Doc. No. 46.)

5

DISCUSSION

Under § 362(d)(2), the automatic stay must be lifted with respect to property if the debtor lacks equity in the property and it is not necessary for reorganization. 11 U.S.C. § 362(d)(2). All of the Debtor's filings allege that there is equity in the Properties. However, even if the Debtor's objections to Meilitz's proof of claim are assumed to be valid, it is clear that there is no equity in the Properties. Because there is no equity in the Properties and the Debtor lacks any prospect of a successful reorganization, the Motions are granted.

A.    The Existence of Meilitz

In response to the Debtor's allegations regarding the dissolution of Meilitz and the incorporation of a separate entity with the same name, Meilitz conceded that the holder of the Notes was dissolved and a new entity, also named Meilitz, was incorporated. (Tr. of Feb. 3, 2016 Hr'g 7:3-8:13.) Meilitz, however, points to New York Business Corporation Law ("BCL") § 1006 which states that "[a] dissolved corporation, its directors, officers and shareholders may continue to function for the purpose of winding up the affairs of the corporation in the same manner as if the dissolution had not taken place." N.Y. Bus. Corp. Law § 1006(a). That statue specifically states that "[t]he corporation may sue or be sued in all courts and participate in actions and proceedings, whether judicial, administrative, arbitrative or otherwise, in its corporate name, and process may be served by or upon it," and that "[t]he dissolution of a corporation shall not affect any remedy available to or against such corporation." Id. §§ 1006(a)(4) and (b). Counsel for Meilitz represented that the entity that filed the claim and that was moving for stay relief was the dissolved Meilitz, not the newly incorporated Meilitz. (Tr. of Feb. 3, 2016 Hr'g 8:7-9.) On this record, there is no basis to conclude that Meilitz lacks standing to file the proof of claim and the Meilitz Motion.

B.  The Amount of Meilitz's Claim

The Forbearance Agreement, signed by both the Debtor and Meilitz, provides the starting point for calculating the correct amount of Meilitz's claim. As of April 30, 2013, the parties agreed that the Debtor was in default from June 1, 2009. They also agreed that the total amount outstanding on all three notes was $1,660,200.00, consisting of $870,000.00 in principal (the total of the original principal balances of all 4 Notes) and $783,000.00 in interest (default interest at 24% from June 1, 2009 to March 1, 2013). The Forbearance Agreement also includes $18,000.00 in legal fees and a credit for $10,800.00 in rent collected directly from a tenant of 1211 Nostrand by Meilitz.

*1. Forbearance Payments*

Pursuant to the Forbearance Agreement, the Debtor was to make an initial payment of $150,000.00 followed by twelve monthly payments of $5,000.00 each and a final balloon payment of $1,100,000.00. The Debtor made an initial payment of $125,000.00[8] and several monthly payments of $5,000.00. In its proof of claim, Meilitz credited the Debtor for eleven monthly payments for a total of $55,000.00. The Debtor, however, provided copies of checks and bank transactions showing thirteen monthly payments, for a total of $65,000.00. Meilitz did not dispute this amount at the Hearing. It is undisputed that the Debtor did not make the final balloon payment. Therefore, the Court will credit the Debtor with payments of $190,000.00 under the Forbearance Agreement.

*2. Rental Income*

In its proof of claim, Meilitz credited the Debtor for $39,200.00 in rental income it collected from a tenant of 1211 Nostrand. The Debtor contends that Meilitz actually collected $81,000.00

---

[8] The Debtor contends it made the full $150,000.00 payment but was unable to supply any evidence of this. Both parties agree that the Debtor paid at least $125,000.00.

from that tenant from February 2012 to November 2015.[9] For purposes of this decision, the Court will assume that the Debtor's number is correct. This number would also include the $10,800.00 recited in the Forbearance Agreement collected by Meilitz from the same tenant.

   3. *Interest Rate*

Meilitz appears to have calculated its claim using the default interest rate of 24% from June 1, 2009 (the date of default recited in the Forbearance Agreement) to the Petition Date. The Debtor argues that since it substantially performed under the Forbearance Agreement, the contract rate should be applied for that period. While it appears that the Debtor never made the required initial payment under the Forbearance Agreement, the Court will assume for purposes of this decision that the contract interest rate should apply for the twelve-month period of May 1, 2013 to May 1, 2014. The default rate of 24% applies to the period from the initial default to the start of the Forbearance Agreement (June 1, 2009 to April 1, 2013) and for the period after the Forbearance Agreement (which the Debtor breached by failing to make the final balloon payment) up to the Petition Date (June 1, 2014 to April 1, 2015).

   4. *Proceeds of the Sale of 1169 Nostrand*

Prior to the Petition Date, Gator, the owner of 1169 Nostrand, filed a petition for relief under chapter 11 of the Bankruptcy Code. See Case No. 13-45564. That case was converted to one under chapter 7 of the Bankruptcy Code and the property was sold by the chapter 7 trustee. (Order Confirming the Sale, Case No. 13-45564, ECF Doc. No. 46.) From the proceeds of the sale, Meilitz received $431,500.00. The Debtor contends that that entire amount should be credited against the outstanding balance on the notes. Meilitz argues that only $291,090.00 should be applied to Note 3

---

[9] In its opposition papers, the Debtor states "Meilitz has been collecting $1,800.00 monthly since February 2012 to the present date." (Mem. of Law in Opp'n ¶26, ECF Doc. No. 60.) While the memorandum of law is dated February 2, 2016, $81,000.00 works out to only 45 months of payments at $1,800.00 a month. Forty-five months would make the relevant collection period February 2012 to November 2015.

because the balance of the proceeds must be paid to satisfy a more senior, unpaid lien on 1169 Nostrand. Meilitz represented that the balance of $140,410.00 was being held in escrow pending the resolution of that claim. The Debtor presented no evidence to rebut this contention, and a review of the docket in Gator's bankruptcy case shows an adversary proceeding filed by the Trustee against Meilitz regarding the balance of the sale proceeds from 1169 Nostrand. (Compl., Adv. Pro. No. 15-1081, ECF Doc. No. 61.) The complaint confirms that Meilitz received $431,500.00 from the sale of 1169 Nostrand, and the trustee seeks the return of $142,501.81 on account of a senior lien. (Id. ¶¶ 35-39.) Meilitz and the chapter 7 trustee have since entered into a stipulation of settlement, approved by the Court, requiring Meilitz to turn over the balance of the proceeds. (Order Approving Settlement, Adv. Pro. No. 15-1081, ECF Doc. No. 18; Mot. to Compromise Controversy, Adv. Pro. No. 15-1081, ECF Doc. No. 16.) Therefore, the Court will credit $291,090.00 towards Note 3.

5. *The Purported Settlement Agreement*

The Debtor argues that Meilitz previously agreed to accept $431,500.00 to satisfy $518,320.00 of the total amount owed on Note 3. In support of this, the Debtor attached emails that appear to be between counsel for the trustee in Gator's chapter 7 case and an attorney for Meilitz. One of the emails by the trustee's counsel to Meilitz's counsel states that Meilitz's lien was $518,320.00. The email goes on to say that "[b]ased on these numbers, your client would have to agree to a payoff of @$431,500 [sic] on this property." (Mem. of Law in Opp'n Ex. B, ECF Doc. No. 60-3.) It is unclear from this email whether this is an offer of settlement (as opposed to the trustee telling the secured creditor how much it would receive from a sale), and if it is an offer, the Debtor presented no evidence to show it was accepted. The Court cannot find acceptance of an offer of settlement on this record.

C.  The Amount of the Bank's Claim

The Bank is the holder of four tax liens from 2008, 2009, 2010, and 2012. As of the Petition Date, the amounts due on the tax liens were $58,102.84, $48,429.34, $17,974.73, and $9,165.02 for a total claim of $133,671.93. (Aff. in Supp. ¶¶ 3, 8-10, ECF Doc. No. 48.) The Debtor does not dispute the amount due on account of the tax liens.

D.  Calculations

As each Note is a separate obligation encumbering one or more properties, the claims and equity will be calculated for each Note and Property individually. The principal balance and unpaid accrued interest through April 1, 2013 set forth below reflect the amounts agreed to by the parties in the Forbearance Agreement. Adding the total payments under the Forbearance Agreement of $190,000.00 plus the $81,000.00 in rent collected by Meilitz yields total payments to be applied of $271,000.00. These payments are applied pro rata to each Note.[10] This results in $37,940.00 applied to Note 1, $62,330.00 applied to Note 2, $78,590.00 applied to Note 3, and $92,140.00 applied to Note 4. The proceeds from the sale of 1169 Nostrand are applied only to Note 3. The following is a breakdown of the balance on each Note:

**Note 1 (1145 Nostrand)**
| | |
|---|---|
| Principal balance: | $125,000.00 |
| Default interest (Jun. 1, 2009 to Apr. 1, 2013) | $112,000.00 |
| Contract interest (May. 1, 2013 to May 1, 2014) | $18,593.76 |
| Default interest (Jun. 1, 2014 to Apr. 1, 2015) | $25,000.00 |
| Less pro rata payments | ($37,940.00) |
| **Total balance** | **$243,153.76** |

---

[10] In its proof of claim, Meilitz applied the payments to each Note on an equal basis. Regardless of whether the payments are applied equally or pro rata, there is no equity in either property.

**Note 2 (1211 Nostrand)**
| | |
|---|---:|
| Principal balance: | $200,000.00 |
| Default interest (Jun. 1, 2009 to Apr. 1, 2013) | $180,000.00 |
| Contract interest (May 1, 2013 to May 1, 2014) | $29,750.04 |
| Default interest (Jun. 1, 2014 to Apr. 1, 2015) | $40,000.00 |
| Less pro rata payments | ($62,330.00) |
| **Total balance** | **$387,420.04** |

**Note 3 (1145 Nostrand, 1169 Nostrand, 1211 Nostrand)**
| | |
|---|---:|
| Principal balance: | $250,000.00 |
| Default interest (Jun. 1, 2009 to Apr. 1, 2013) | $225,000.00 |
| Contract interest (May 1, 2013 to May 1, 2014) | $37,187.52 |
| Default interest (Jun. 1, 2014 to Apr. 1, 2015) | $50,000.00 |
| Less pro rata payments | ($78,590.00) |
| Less sale proceeds | ($291,090.00) |
| **Total balance** | **$192,498.52** |

**Note 4 (1145 Nostrand)**
| | |
|---|---:|
| Principal balance: | $295,000.00 |
| Default interest (Jun. 1, 2009 to Apr. 1, 2013) | $265,000.00 |
| Contract interest (May 1, 2013 to May 1, 2014) | $43,881.24 |
| Default interest (Jun. 1, 2014 to Apr. 1, 2015) | $59,000.00 |
| Less pro rata payments | ($92,140.00) |
| **Total balance** | **$570,741.24** |

Adding together the total balance on the Notes encumbering 1145 Nostrand yields a total outstanding balance of $1,006,393.52. The highest value attributed to 1145 Nostrand is $565,000.00 from Meilitz's appraisal. As a result, 1145 Nostrand has over $400,000.00 in negative equity.

Adding together the total balance of the Notes encumbering 1211 Nostrand yields a total outstanding balance of $579,918.56. In addition to Meilitz's claim, 1211 Nostrand is also encumbered by the Bank's total claim of $133,671.93. That brings the total claims on 1211 Nostrand to $713,590.49. The highest value attributed to 1211 Nostrand is $646,929.00 from the Debtor's schedules. As a result, 1211 Nostrand has over $60,000.00 in negative equity.

In undertaking these calculations, the Court made several assumptions in favor of the Debtor. It is possible that Meilitz would be entitled to default interest during the period of the

Forbearance Agreement due to the Debtor's default. Further, the Court credited the Debtor with $81,000.00 in rental payments despite Meilitz's representation that it had ceased such collections on the Petition Date. Finally, these calculations omit any legal fees Meilitz would be entitled to charge to the Debtor under the Notes. Even giving the Debtor the benefit of these allowances, there is still no equity in the Properties.

E.    Prospects for Reorganization

Under § 362(g), once lack of equity in the property has been demonstrated, the party opposing stay relief has the burden to show "that the property is essential for an effective reorganization *that is in prospect*." United Sav. Ass'n of Texas v. Timbers of Inwood Forest Associates, Ltd., 484 U.S. 365, 375-76, 108 S. Ct. 626, 98 L. Ed. 2d 740 (1988). The Debtor filed this case on April 5, 2015. In that time, the Debtor has failed to take any steps to effectuate a reorganization. The Debtor has not proposed a plan of reorganization nor given the Court any indication that it could propose a confirmable plan. The Debtor's exclusive period to file a plan expired on September 28, 2015. The monthly operating reports field by the Debtor consistently show rent collections that are well below the stated rent roll. Arrears on each rental unit have been increasing almost every month. In light of the poor cash flow and the Debtor's failure to make any progress towards a plan of reorganization, the Court finds that the Debtor lacks any prospect of a successful reorganization at this time.

## CONCLUSION

For the reasons stated above, the Motions are granted. A separate order will issue.

**Dated: Brooklyn, New York**
**February 29, 2016**

Carla E. Craig
**Carla E. Craig**
**United States Bankruptcy Judge**